IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

VALERIE M. BOYER                                                                PLAINTIFF

VS.                                      CIVIL NO. 04-3076

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                                     DEFENDANT

## MEMORANDUM OPINION

Valerie Boyer ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration, denying her application for supplemental security income benefits ("SSI"), under Title XVI of the Act.

**Background:**

The application for SSI now before this court was filed on November 19, 2002, alleging an amended onset date of October 9, 2002,[1] due to Type 1 insulin dependent diabetes mellitus ("IDDM"), peripheral neuropathy in both legs,[2] retinopathy, coronary artery disease, hypertension, depression, and posttraumatic stress disorder ("PTSD").[3] (Tr. 19-21, 63-64). An administrative hearing was held on

---

[1]On his application, plaintiff originally alleged January 1, 1997, as her date of onset. (Tr. 19-20, 63-64). However, at the hearing, she amended her onset date to October 9, 2002. (Tr. 20, 427).

[2]Peripheral neuropathy describes a condition resulting in damage to the peripheral nervous system, the vast communications network that transmits information to and from the brain and spinal cord to every other part of the body. *See* National Institute of Neurological Disorders and Stroke, *Peripheral Neuropathy Fact Sheet*, *at* ninds.nih.gov.

[3]PTSD is a psychiatric disorder marked by repeated flashbacks and nightmares of an experienced or witnessed life-threatening event, such as a violent personal assault, like rape. *See* National Center for Posttraumatic Stress Disorder, *What is Posttraumatic Stress Disorder?*, *at* www.ncptsd.va.gov. Individuals suffering from PTSD often experience biological changes, as well as psychological symptoms. *Id*. The disorder is associated with impairment of the person's ability to function in social or family life, including occupational

February 12, 2004. (Tr. 423-468). Plaintiff was present and represented by counsel.

On April 27, 2004, the Administrative Law Judge ("ALJ"), issued a written opinion finding that, although severe, plaintiff's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 28). At this time, plaintiff was forty-one years old and possessed an eleventh grade education. (Tr. 75, 428-429). The record reflects that she had no past relevant work experience ("PRW"). (Tr. 27, 459).

After discrediting plaintiff's subjective allegations, the ALJ concluded that she maintained the residual functional capacity ("RFC"), to perform light work, limited by her ability to have only incidental contact with the general public and co-workers, and to perform simple one and two-step tasks. (Tr. 29). Further, the ALJ concluded that plaintiff should avoid hazards such as ropes, ladders, and scaffolds; was limited to frequent pushing and pulling with her upper extremity and fingering with both hands; and, could only occasionally feel with both feet. (Tr. 29). With the assistance of a vocational expert, the ALJ then found that plaintiff could perform a significant number of jobs available in the national economy, to include the positions of inventory clerk, hand packager, and assembly worker. (Tr. 29).

On October 7, 2004, the Appeals Council declined to review this decision. (Tr. 8-10). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 8).

---

instability, marital problems and divorces, family discord, and difficulties in parenting. *Id*.

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process

3

to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Before addressing the evidence, the Court deems it important to note that the relevant time period in this case is limited. SSI may not be granted prior to a claimant's application filing date, because benefits through an SSI application are allowed only after all regulatory criteria are established, namely after the SSI application is filed. *See* 20 C.F.R. § 416.335; *Jernigan v. Sullivan*, 948 F.2d 1070, 1072 n. 3 (8th Cir. 1991). Therefore, plaintiff must prove that her disability commenced on or after November 19, 2002, the date her application for benefits was filed, and continued through April 27, 2004, the date of the ALJ's decision.

A thorough review of the record indicates that the ALJ failed to properly consider all the relevant medical evidence regarding plaintiff's Type 1 IDDM, neuropathy, retinopathy, coronary artery disease, hypertension, PTSD, and major depression. In addition, he did not consider these impairments in combination, as is required by the regulations. *See* 20 C.F.R. §§ 404.1520(a)-

AO72A
(Rev. 8/82)

(f)(2003). Instead, the ALJ merely mentioned each impairment separately, dismissing each one without considering how it might affect plaintiff's remaining diagnoses.

In the present case, while the ALJ recognized that plaintiff suffered from IDDM, he dismissed the alleged severity of this disease by stating that there was no evidence in the record of end organ disease. (Tr. 24). Further, he stated that plaintiff's allegations that she suffered from brittle diabetes were not supported by the evidence, as he could find no evidence of severe hypoglycemic episodes or ketoacidosis. The ALJ then referred to medical records dated before the relevant time period to support his conclusion that her condition was controllable via medication. (Tr. 24).

However, in actuality, the evidence reveals that plaintiff has been suffering from uncontrolled diabetes, at least since the date of the filing of her application for benefits. (Tr. 169). Further, her most recent medical reports indicate that her condition has continued to remain out of control, indicating "lots of sugar" in her urine, postprandial blood sugar levels between 200 and 400, and fasting blood sugar levels as low as 30, in spite of being prescribed a 1500 to 1800 calorie diet and receiving repeated insulin dosage adjustments. (Tr. 116-117, 245, 297, 298, 299, 355, 356, 357, 394, 395). In fact, plaintiff has also been diagnosed with peripheral neuropathy in her lower extremities, possible Charcot arthropathy,[4] and retinopathy[5] in both eyes, due to her diabetes. (Tr. 167, 210, 230,

---

[4]Charcot arthropathy is a progressive condition of the musculoskeletal system characterized by joint dislocations, pathologic fractures, and debilitating deformities. *See* Mrugeshkumar Shah, *Charcot Arthropathy*, *at* www.emedicine.com. This disorder results in progressive destruction of bone and soft tissues at weight-bearing joints and may cause significant disruption of the bony architecture in its most severe form. *Id*. Charcot arthropathy can occur at any joint; however, it occurs most commonly in the lower extremity at the foot and ankle. *Id*.

[5]Retinopathy is a form of non-inflammatory damage to the retina of the eye, most commonly caused by problems with the blood supply. *See* WIKIPEDIA, *at*

336, 353, 360, 366, 371). There is even some evidence to suggest that she underwent surgery on her lower extremities, due to this neuropathy. (Tr. 397, 411, 414). These facts, however, were not considered by the ALJ. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). As such, we believe that remand is necessary to allow the ALJ to properly consider the evidence concerning plaintiff's diabetes, as well as the side effects resulting from this impairment.

As for plaintiff's heart problems, records indicate that plaintiff had been diagnosed with coronary artery disease.[6] (Tr. 299, 301, 303, 310, 340, 353). As a result, she reported experiencing intermittent episodes of chest pain, requiring her to take one to two Nitroglycerine tablets per week. (Tr. 156, 162, 178, 248, 272). In fact, objective tests revealed some posterior ischemia. (Tr. 383-384). At one point, plaintiff was even diagnosed with sinus bradycardia with syncope, due to experiencing a slow heart rate, shortness of breath, and fainting spells. (Tr. 393). Further, in spite of treatment, she continued to suffer from uncontrolled hypertension and diabetes, two of the major risk factors for developing coronary artery disease and experiencing a heart attack. *See Heart Disease: Coronary Artery Disease*, at www.webmd.com. However, once again, the ALJ failed to note the significance of these findings. Therefore, we believe that remand is necessary to allow him to consider these conditions in combination before rendering an opinion concerning plaintiff's RFC.

---

www.wikipedia.org. Frequently, retinopathy is an ocular manifestation of systemic disease, such as diabetes. *Id*.

[6]Coronary artery disease occurs when the coronary arteries--the blood vessels that supply blood to the heart--are narrowed or blocked, restricting blood flow to the heart. *See Heart Disease: Coronary Artery Disease*, at www.webmd.com. Without adequate blood, the heart becomes starved of oxygen and vital nutrients it needs to work properly. *Id*.

6

*See Reeder*, 214 F.3d at 988.

Likewise, the ALJ failed to adequately consider plaintiff's mental impairments. Records indicate that plaintiff had been sexually abused as a child, physically and mentally abused by her ex-husband, and raped on at least two occasions after reaching adulthood. Most recently, plaintiff was raped by two men in her neighborhood, and allegedly gave her herpes. (Tr. 180, 183, 184, 209, 210, 213, 252-271, 292, 302, 341, 410). As a result, she reported suffering from panic attacks, depression, and flashbacks of the assault. In fact, on several occasions, her global assessment of functioning ("GAF"), score was noted to be between forty-five and fifty, indicating severe symptoms or serious impairments in social, occupational or school functioning. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV 34 (4th ed. Revised 2000). This is further supported by the RFC assessment of counselor and Licensed Social Worker, Amy Peeples, who noted marked limitations regarding plaintiff's ability to understand and remember detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; and, complete a normal workday and workweek without interruptions.[7] (Tr. 375-376). She also documented moderate limitations in the areas of carrying out detailed instructions, maintaining concentration and attention for extended periods of time, accepting instructions, responding appropriately to criticism, traveling in unfamiliar places, and using public transportation. (Tr. 375-377). Similarly, Dr. Brad Williams, a non-

---

[7]While we acknowledge that a Licensed Social Worker is not an acceptable medical source, we do believe that Ms. Peeple's RFC assessment, as a report coming from a treating source, was entitled to some weight. *See Raney v. Barnhart,* 396 F.3d 1007, 1010 (8th Cir. 2005).

examining, consultative physician noted moderate limitations with regard to plaintiff's ability to understand, remember, and carry out detailed instructions; maintain attention for extended periods of time; complete a normal workday and workweek without interruptions; accept instructions and respond appropriately to criticism from supervisors; and, set realistic goals or make plans independently of others. (Tr. 268-269). The ALJ did not, however, properly consider all of these impairments. Instead, he merely found that she was limited by her ability to have only incidental contact with the general public and co-workers, and to perform simple one and two-step tasks. Therefore, remand is necessary to allow the ALJ to properly evaluate the evidence concerning plaintiff's mental limitations.

We also note that the ALJ has chosen to dismiss Dr. Kevin Jackson's physical RFC assessment completed in December 2003, stating that it is not supported by the overall weight of the evidence. After reviewing this evidence, we do not agree. In his report, Dr. Jackson indicated that he had been treating plaintiff on a monthly basis for the past six months. (Tr. 340). Plaintiff's diagnoses were said to include IDDM and coronary artery disease, both having a lifelong prognosis. Dr. Jackson noted that plaintiff's symptoms included fatigue and weakness, and that her condition was evidenced by abnormal laboratory values. He was of the opinion that the hypoglycemia, resulting from her required use of insulin to treat her hyperglycemia, would interfere with her ability to work. Further, Dr. Jackson indicated that plaintiff suffered from depression and anxiety, resulting in symptoms that would constantly interfere with her ability to maintain attention and concentration, rendering her incapable of even a low stress job. (Tr. 341).

With regard to her physical limitations, Dr. Jackson reported that plaintiff could walk three

AO72A
(Rev. 8/82)

city blocks without having to stop, sit for thirty minutes at one time for a total of four hours during an eight-hour workday, and stand for thirty minutes at one time for a total of four hours daily. (Tr. 341-342). In addition, the doctor noted that she would require a job that allowed her a sit/stand option; required lifting no more than 10 pounds frequently and twenty pounds occasionally; required only occasional climbing and frequent twisting, stooping, and crouching; and, did not require her to use her hand, fingers, or arms more than fifty percent of the time. (Tr. 342-343).

However, in spite of Dr. Jackson's findings, the ALJ relied on the findings of a non-examining, consultative physician in concluding that plaintiff could perform a significant range of light work. (Tr. 27). He even acknowledged that this level of work required a good deal of walking or standing. (Tr. 27). We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Thus, given the fact that Dr. Jackson has been treating plaintiff since June 2003, and that we can find no objective evidence to negate his findings, we believe that remand is necessary to allow the ALJ to reconsider his opinion. *See Collins ex rel. Williams v. Barnhart*, 335 F.3d 726, 730 (8th Cir. 2003) (holding that a treating physician's opinion is generally entitled to substantial weight). Further, in light of the evidence suggesting that plaintiff has undergone surgery on her lower extremities, on remand, we believe that Dr. Jackson should be asked to complete an updated RFC assessment.

In addition, it is of significance to note that the record does not contain a full account of the surgical procedure performed on plaintiff's legs. As such, we believe that remand is also necessary to allow the ALJ to develop the record further concerning this evidence. *See Haley v. Massanari*, 258

F.3d 742, 749-50 (8th Cir. 2001).

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 15th day of November 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)